# McCORMICK *against* MILLER.

A constable having several executions against the same defendant in his hands at the same time, makes a levy, and endorses a schedule of the goods levied on one of the executions, this is a good levy on all the executions.

The property of an absconding debtor, against whom a domestic attachment had issued, by a Justice of the Peace, is not vested in the trustees, until after their appointment; there is no relation back to the time when the attachment issued.

In an action against a constable, for money had and received, being the proceeds of a sale of personal property upon an execution, by the trustees under a domestic attachment, issued against the same defendant whose property was sold by the constable, it is not competent for the plaintiff to establish by proof, that the judgment upon which the execution issued, was obtained by the fraud of the plaintiff; although the constable had notice of the fraud, before he paid over the money to the plaintiff, and took an indemnity from him.

A domestic attachment may be executed by a deputy constable: and the proper direction to be given to process by a Justice of the Peace, is to the constable, although it may be known, that it will be executed by his deputy.

WRIT of error to the Common Pleas of *Cumberland* county.

This was an action on the case for money had and received, which originated before a Justice of the Peace, from whose judgment the plaintiff appealed.

The plaintiff, to support this action, gave in evidence the docket of Justice *Doyle*, containing the record of the issuing of a domestic attachment at the suit of *Alexander Barr* against *John Hamilton.* The writ, directed to the constable of *Carlisle*, was issued on the 9th March, 1819, returnable on the 15th March, at 11 o'clock, A.

(McCormick v. Miller.)

M.    This writ was executed by *Richard Miles*, who on the 10th March, attached the personal property of *John Hamilton*, as per endorsement on writ.

At the time the writ issued, *Richard Miles* was a general deputy of the constable of Carlisle, appointed with the approbation of the Court of Quarter Sessions, and so entered on the record of that court.

On the 16th March, 1819, *Henry Miller* sold the personal property of *John Hamilton*, which had been attached, at public vendue, for one hundred and four dollars and ninety-seven cents.

The defendant then gave in evidence, the docket of 'Squire *Heap*, containing the record of a suit of *Isaiah Graham v. John Hamilton*, and four other suits against the same defendant, in which the writs of summons issued on the 5th March, 1819, and were returnable on the 9th March: on that day the justice entered a judgment in each of the cases for the plaintiff: the judgment of *Isaiah Graham*, was for nineteen dollars and ninety-nine cents and costs.   Executions were immediately issued upon all the judgments, directed to *Henry Miller*.    And upon the execution of *Isaiah Graham*, there was a levy endorsed 9th March, 1819, of the personal property of *John Hamilton*.    No endorsement upon any other of the executions, except the name of the plaintiff.   The property so levied was the same which *Henry Miller* sold on the 16th March.

*Richard Miles*, sworn.

*Miller* was there the same day, I served the attachment; at any rate before the sale of the property, he said he was indemnified. He said he had levied the property the day before.    I was acting constable of the borough of *Carlisle*.    The property was in *West Pennsborough* township, *Cumberland* county.

The plaintiff requested the court to charge the jury on the following points:

1. That upon the *issuing* of a domestic attachment it becomes a lien upon all the personal property of the defendant in the county, and therefore the plaintiff is entitled to recover the whole amount of the sale, after deducting costs.

2. That there being no levy upon any of the executions given in evidence, except that of *Isaiah Graham*, Esquire, at all events, the plaintiff is entitled to the balance of the proceeds of sale, after deducting that judgment and costs of sale.

3. If the jury believe, that at the time the suits before the justice were instituted, the plaintiffs therein knew that *John Hamilton*,

(McCormick *v.* Miller.)

had absconded, and at the time the judgments were rendered, that a domestic attachment had issued, and that they are now the real defendants in this suit, they cannot defend themselves by those judgments against the plaintiff's claim.

4. If the jury believe, that *Henry Miller* knew of the claim of the trustees under the domestic attachment, before he applied the money to the judgments and executions, and declared, that he was indemnified for thus paying over the money; it is a waiver of the necessity of a demand of a copy of the warrant, as required by the act of 1772, even if such demand is necessary, in a case of this kind.

The court answered the first, second and third points in the negative; and said, that their answers to those points rendered the fourth unimportant.

Defendant's points.

1. If *John Phillips* continued to act as constable, the deputation of *Richard Miles*, was illegal and void; and he could not execute the attachment in *West Pennsborough* township.

2. The attachment was not directed to the constable of *Carlisle*, nor to a person who was a constable: it is illegal, and can vest no title in the plaintiff.

3. The lien of constable *Miller* attached when he made his levy on the 9th of March, and neither the constable, nor any other person, could execute the attachment on the same property on the 10th. And any such executing, could not affect the first constable's right.

4. If all the executions were in the hands of constable *Miller* when he made the levy, he had a right to proceed upon them all, and to apply the proceeds to their satisfaction:—the fact of a levy being *endorsed* only on one, would not defeat the right:—the law considers that as being done, which ought to have been done:—this right was in full force, and unexpired when this suit was brought:—and it is a question for the jury to determine, from all the facts, whether the levy and sale was, or was not made in pursuance of them all.

5. The suit of plaintiffs cannot be sustained, without having proved a demand on the constable, (the defendant,) for a copy of his warrant or warrants, before the suit was brought.

6. The executions in the hands of the constable, when he made the levy and sale, are a complete bar to any recovery against him.

7. The judgments before 'Squire *Heap*, are conclusive, and

(McCormick *v.* Miller.)

not open to investigation in this suit,—as to regularity or otherwise.

8. Plaintiff's have not proved any debt to be owing by *Hamilton* to *Barr*, and without such proof, the plaintiff can not recover.

The court answered all these points in the affirmative, except the fifth and eighth, which were in the negative. An exception was taken to the opinion of the court, and was here assigned for error.

*F. Watts* and *Carothers* for plaintiff in error.

*S. Alexander* for defendant in error.

The opinion of the court was delivered by

Huston, J.—The plaintiff gave in evidence the docket of Justice *Doyle* of *Carlisle*, containing the record of a domestic attachment, at the suit of *Alexander Barr* against *John Hamilton* an absconding debtor. It was issued on the oath of *Barr*, stating that *Hamilton* had absconded, &c. &c. six days, on this affidavit, made 9th March, 1819, the writ of attachment issued the same day, directed to *Richard Miles*, deputy constable of *Carlisle*. *Richard Miles* was a general deputy of the constable of *Carlisle*, duly appointed and approved by the court—this writ was executed on the 10th of March, 1819, and goods in *West Pennsborough* township were attached.

The defendant gave in evidence the record of an action before *John Heap*, Esquire, at the suit of *Isaiah Graham* against *John Hamilton*, and four other suits before the same justice against the same defendant, commenced the 5th of March, 1819, on all of which judgments were entered the 9th of March, 1819, and executions issued the same day and directed to the defendant, who levied, on the same 9th of March, on the goods which, on the next day, *Miles*, constable of *Carlisle*, laid the attachment. Constable *Miller* advertised and sold the goods on the 16th of March, and paid the amount of sales, (about one hundred and four dollars,) towards satisfying the debt and costs due on the executions in his hands. Constable *Miller*, when he made the levy, endorsed on the execution of *Graham* the schedule of the property levied on; he did not endorse it on the others; but it was in proof he had the others in his hand, and got them all at the same time.

Many propositions of law, were submitted to the court by the counsel on each side, and answered by the court, and every one was discussed here, with some zeal. I shall only notice such of them as are necessary to decide the cause.

It was contended, that because *Miller* had not endorsed a list of the goods levied on each execution, and in fact had not endorsed it on any but one, therefore, he could only retain for the amount of that one execution.    The endorsement on the execution is not the levy, but one of the evidences of it.   The schedule of property was levied on, if the articles are numerous, are seldom written, in the first instance, on the execution.   The sheriff tells the defendant, I levy on such articles, specifying them; and after this puts the list in writing, generally before leaving the ground.

A sheriff having two or more executions in his hands, seizes goods: this is the levy: he endorses a list of the goods on one of the executions, or, more generally, on a separate paper: this is good for all; he is not required to make a separate schedule for each: he seldom annexes the list to any execution until he is making his return, and then annexes it to one and refers to it in the return to the others:—so he may make the list on one execution and refer to it in his return on the others; and the return is never written on the others, until the return day.   I do not say this is the most correct course for a sheriff, but it is so universal and without exception, that I can not say it is bad.   The levy, however, all this time, is on all the executions, if it was so made, and so expressed to be at the time it was made; and whether it is so or not, is a fact, and was so left by the court, who told the jury, a levy was indispensable.    But executions in the constable's hands and a levy made before the attachment was executed, would bar the plaintiff's recovery.

It was next contended, that the right to the goods was in the trustees, as soon as they were appointed; and by relation, this right commenced at the time the attachment issued.    This *is so*, expressly in the case of an attachment issued out of the Court of Common Pleas, (unless in certain excepted cases,) but it is made so by express enactment: and I am not aware that, at present, we have any case in which any person has, by relation, a right to the property of goods before the act which vested them in him, took place, unless such right is given by express legislative enactment. In the act about attachments to be granted by Justices of the Peace, there is nothing vesting the property in the trustees, before their appointment, which is to be after the return of the attachment process.    But many things, in fact every thing in the law, indicates a contrary intention.

The executions, then, being levied before the attachment was executed, and the goods sold on the levy, the plaintiffs, who were not appointed trustees till several days after the levy, cannot take them.

But it was said these judgments were fraudulent, in this at least, that the several plaintiffs knew that *John Hamilton* had abscond-

(McCormick *v.* Miller.)

ed, and that a summons taken out with such knowledge and served by leaving a copy with his wife at his house, was a fraud on other creditors:—that those plaintiffs who then got execution and obtained their debts, must give up the money when an attachment was subsequently taken out.    In the first place, there was no evidence that *Hamilton* had absconded when the several plaintiffs sued him, except the affidavit of *Barr*, filed with the justice, when he got his attachment:—and although that was sufficient to obtain his writ, it is no evidence in this case against this defendant.    Our law expressly authorises process to appear and answer, to be served by leaving a copy at the defendant's house with his family; and a judgment obtained on process so served, is in all respects regular; at least, until something is proved which will avoid it.    But however this might be the subject of inquiry, if this suit had been against the plaintiffs in those suits, it was not offered to be proved, that the defendant knew any thing of it.    He was bound to execute the executions put into his hands.    By the act of 21st March, 1772, no suit is to be instituted against a constable for any thing done in obedience to a warrant under the hand and seal of a justice, until demand in person or by written notice, &c. of a copy of his warrant, and refusal for six days to give such copy; and if suit is brought against such constable without joining the justice, or against the constable and justice, the constable who produces at the trial and proves such warrant, under the hand and seal of a justice, shall have a verdict in his favour, whether the justice *has jurisdiction or not.*    I am aware the protection given by this act, has been greatly curtailed by some decisions which would confine it to actions sounding in tort, or to suits brought by defendants, whose goods are taken under process; but in cases where the justice has jurisdiction, and his process is regular, even without the protection of this act, a constable would, I apprehend, be safe from the imputation arising from fraud in the plaintiff in the suit.    If the goods taken were not the property of *Hamilton,* and the constable levied on goods of a third person, it might be one thing—if the constable were even bound to look at the judgment, which he is not, and it appeared regular on the face of it, and the execution was regular, I know of no authority which will justify a suit against a constable who executes an execution in such case, because the defendant alleges he can prove by something extrinsic the record, that the plaintiff ought not to recover—nor can I find any principle which would justify it—it would be subjecting one man to pay money, or costs at least, for the fault of another, and that, when he not only did not know of such fault, but might never have heard of it until too late.

By an act of assembly, the constable is liable to a suit and very summary proceedings, if he does not produce the plaintiff's receipt,

(McCormick v. Miller.)

or the money, or some other sufficient return on the return day of his execution.    The record of the justice, shews that the plaintiffs were paid, and satisfaction entered; but whether the constable paid the money to the plaintiffs or to the justice and he paid it to the plaintiffs does not appear; nor is there any evidence that the plaintiffs in this suit, gave him notice not to pay it.    The only evidence at all referring to this subject, is that of *Miles*, who says, that on the day he executed the attachment *Miller* told him he had levied on those goods, and that he was or would be indemnified.    The court were right in directing the jury, that in this case, in this suit against *Miller*, they were not bound to find against him, though they should believe the plaintiffs in the executions had obtained their judgment unfairly, as it was not alleged that *Miller* knew of such unfairness, if any existed.

Much was said about the authority of a constable and a deputy constable.    I see no reason why a constable, who has according to law appointed a deputy, who has been approved by the court, should not still be constable, and capable to act and execute process;—nor why a general deputy of a constable, when so appointed, cannot execute one kind of process as well as any other kind. As to the power of a constable out of his district, or his liability for not executing process out of his district, except where there is no constable in the township, or the constable of the township is the defendant, or the plaintiff, or a relation of the party or parties —I say nothing.    Although it is expected that the process will be executed by a deputy constable, yet it ought to be directed to the constable of the township.

Judgment affirmed.